**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| LeeAnthony C., | Case No. 18-cv-77 (NEB/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | |
| Defendant. | |

James H. Greeman, Greeman Toomey, 250 Marquette Avenue, Suite 1380, Minneapolis, MN 55401 (for Plaintiff); and

James D. Sides, Special Assistant United States Attorney, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

## I. INTRODUCTION

Plaintiff LeeAnthony C. challenges Defendant Commissioner of Social Security's denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. This matter is before the Court on the parties' cross motions for summary judgment. These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Nancy E. Brasel, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, the Court recommends that Plaintiff's motion be denied and that Defendant's motion be granted.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an action for SSI on September 18, 2015, alleging a disability onset date of September 15, 2012.[1] Plaintiff alleged impairments of chronic left knee pain, memory loss, high blood pressure, and high cholesterol. Plaintiff was found not disabled on December 23, 2015. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held on September 20, 2017 and, on October 3, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied his request for review. Plaintiff now seeks review by this Court.

### B. Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the following severe impairment: borderline intellectual functioning versus mild cognitive brain disorder related to traumatic brain injury. (Tr. 19). The ALJ further found and concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 23-26). The ALJ considered Listings 12.02 (neurocognitive disorders) and 12.05 (intellectual disorder). Following this, the ALJ found Plaintiff to have the residual functioning capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: may perform only simple routine tasks." (Tr. 26). The ALJ then concluded that

---

[1] At the hearing before the ALJ, Plaintiff amended the alleged onset date to June 30, 2013.

2

Plaintiff was capable of performing past relevant work as a warehouse worker and that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 33-34). In particular, the ALJ determined that Plaintiff could work as a hand packager, hospital cleaner, and laundry worker II. (Tr. 34). Accordingly, the ALJ found that Plaintiff was not disabled since September 18, 2015. (Tr. 34).

### III.  ANALYSIS

#### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

> (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could

>perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)); 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir. 2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578) (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v.*

*Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578.

### B. ALJ Was Not Required to Apply the Doctrine of Res Judicata

Plaintiff first contends that the ALJ erred by failing to apply the doctrine of res judicata to this case. Plaintiff argues that the ALJ was bound by the RFC determination made by a different ALJ in a decision dated June 24, 2011. There, the ALJ found and concluded that Plaintiff had the RFC "to perform a range of light work." (Tr. 99). Specifically, the ALJ found in the June 2011 decision that Plaintiff was "limited to lifting no more than 20 pounds, and lifting up to 10 pounds frequently." (Tr. 99). The ALJ further found that Plaintiff was precluded from "more than occasional climbing, stooping, bending, crouching, crawling, and kneeling," and that he required "a sit/stand option so that he need not stand for more than 30 minutes at a time." (Tr. 99). But because the previous ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, the ALJ found that Plaintiff was not disabled from April 13, 2006 through the date of his decision. (Tr. 104-05). Plaintiff contends, however, that with his advanced age, there no longer are jobs that he could perform, and thus, the ALJ in this case was required to accept the RFC from the previous matter and find him to be disabled.

Res judicata bars relitigation of a claim if: "(1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both

cases." *Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir. 1990). A claim is barred under this doctrine if it arises "out of the same nucleus of operative facts as the prior claim" and "proof of the same facts will support both actions, or . . . the wrong for which redress is sought is the same in both actions. *Id.*; *Poe v. John Deere Co.*, 695 F.2d 1103, 1106 (8th Cir. 1982). Whether two claims constitute the same transaction is to be determined "pragmatically." *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir. 1989).

There is no dispute that res judicata applies in social security determinations. *Aguiniga v. Colvin*, 833 F.3d 896, 900 (8th Cir. 2016). But the doctrine applies only when the issue "involves the same evidence, and the same period of disability." *Id*. That is not the case here. Plaintiff's previous claim related to allegations of disability beginning April 13, 2006 and ending June 24, 2011, the date of the ALJ's decision. His current claim alleges disability beginning June 30, 2013 (based on his oral amendment at the ALJ hearing). As a result, the facts and evidence that support his current claim differ from those that support his previous claim, and vice versa. The ALJ was therefore well within his discretion to making findings and conclusions regarding a new RFC, which reflected the period of disability actually alleged by Plaintiff. The doctrine of res judicata is not applicable here.

Plaintiff further argues that the ALJ erred in assessing Plaintiff's RFC because there was no evidence to demonstrate medical improvement between June 2011, when the first decision was issued, and September 2017, when the second decision was issued. But an ALJ is required to consider evidence of medical improvement only after making a finding that the claimant is disabled. 20 C.F.R. § 416.989 (noting that Commissioner must "evaluate [the claimant's] impairments from time to time" after finding that claimant

6

disabled). In this case, there was no prior finding that Plaintiff was disabled, and so the ALJ was not required to consider whether the evidence showed medical improvement on the part of Plaintiff. Instead, the ALJ was free to make his own independent findings and conclusions regarding Plaintiff's RFC based on the evidence in the record as a whole. The Court therefore concludes that the ALJ did not err in declining to apply the doctrine of res judicata here.

### C. Plaintiff's RFC Is Supported by Substantial Evidence

Plaintiff next argues that the ALJ's findings and conclusions regarding his RFC are not supported by substantial evidence in the record as a whole. RFC is defined as the most a claimant can do despite his limitations, including both physical and mental limitations. 20 C.F.R. § 416.945. The Commissioner's determination of a claimant's RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, Plaintiff challenges the ALJ's finding that Plaintiff did not have any physical limitations, arguing that the ALJ should have found his left knee pain to constitute a severe physical impairment. The ALJ reached his decision based on his findings that Plaintiff did not seek treatment for his knee pain, that there was no diagnosis in the record related to his knee pain, and that Plaintiff was able to walk most places. (Tr. 16, 19-22). The ALJ further noted that Plaintiff did not exhibit any impairment while walking and that did not require the use of any assistive device to move around. (Tr. 19-22).

7

In November 2014, Plaintiff presented to the Hennepin County Medical Center ("HCMC"), seeking treatment for right knee pain.[2] (Tr. 395). He indicated that he underwent surgery several years ago after he was hit by a car. (Tr. 395). He also reported that he was homeless and so walked many places. (Tr. 395). The treating provider noted that the cause of Plaintiff's pain was likely osteoarthrosis that had been exacerbated by walking most of the day. (Tr. 397). The provider recommended that Plaintiff apply a treatment cream to his knee. No other diagnosis was reached.

Plaintiff returned to HCMC for a physical rehabilitation consultation in February 2015. (Tr. 446). Plaintiff described himself as having "persistent chronic pain" that was sharp only when he walks. (Tr. 446). He also indicated that he was not able to bend his left knee as much as his other knee and that it bothered him to walk great distances. (Tr. 446). The treating provider did not observe any swelling or locking. (Tr. 446). The provider also indicated that Plaintiff could walk without an assistive device, that there is no "antalgic component to his gait," that he could stand on his toes and heels, that he could perform a deep knee bend, and that he exhibited a full range of motion. (Tr. 447). The provider also observed no effusion in the knee, no joint line tenderness, and patellar grind. (Tr. 447). The provider did, however, note that Plaintiff exhibited laxity with varus stress to the knee. (Tr. 447). A few weeks later, Plaintiff saw physician assistant Elizabeth Crowl on March 20,

---

[2] It is not clear if treatment here related to Plaintiff's right knee. The remainder of the medical evidence relates to pain that Plaintiff reported in his left knee. It is possible, as Plaintiff suggests, that the discrepancy is the result of a scrivener's error. Regardless, even assuming that this record related to Plaintiff's left knee, the Court's decision would not change.

8

2015. (Tr. 375). In that appointment, she noted that Plaintiff exhibited normal range of motion. (Tr. 376).

Plaintiff had a follow-up appointment with a HCMC physician in late March 2015. He reported continued pain in his left knee with prolonged walking. (Tr. 467). As before, the provider did not observe any tenderness or effusion, but did note continued ligamentous laxity with varus stressing. (Tr. 468). The provider also noted that Plaintiff's gait was within normal limits and that he was "safe without an assistive device." (Tr. 468).

Plaintiff then had a physical therapy appointment in April 2015. (Tr. 475). The therapist indicated that Plaintiff's gait was good and Plaintiff reported a little ache "in the left medial patellar area" at "heelstrike." (Tr. 476). The therapist also reported that Plaintiff was able to walk briskly up and down stairs and that he exhibited full and free extension and flexion for both knees. (Tr. 476-77). Plaintiff's therapist recommended regular exercise, but determined that Plaintiff's knee pain was chronic, rather than severe or irritable. (Tr. 477). In subsequent physical therapy treatment notes, Plaintiff's therapist noted that his gait was fast and not antalgic. (Tr. 482, 487). He also noted that Plaintiff could stand and pivot degrees left or right. (Tr. 482, 487). Plaintiff's therapist continued to diagnose Plaintiff's left knee pain as chronic and not severe. (Tr. 483).

A few months later, Plaintiff had an x-ray of his left knee. The x-ray indicated no "acute" abnormalities, other than postoperative changes from his previous surgery. (Tr. 688). Plaintiff was ultimately discharged from physical therapy after he did not follow through with the recommended treatment plan. (Tr. 1063).

In September 2016, Plaintiff reported to the emergency medicine department of HCMC that he was experiencing bilateral leg discomfort and swelling. (Tr. 837). Plaintiff indicated that the pain was most noticeable while walking and that it improved somewhat with rest. (Tr. 837). It does not appear that any formal diagnosis was made or medication prescribed following the visit. Plaintiff again reported to the emergency department for treatment of foot pain in May 2017. At that appointment, the treating provider noted that Plaintiff had normal range of motion. (Tr. 909). Throughout these various medical appointments, Plaintiff was ordered to take nothing more than over-the-counter pain medication and cream for his pain. (Tr. 682, 852-53, 863, 909-10).

State consultant Dr. Steven Richards assessed Plaintiff's claim at the initial level. (Tr. 119). He determined that Plaintiff had knee pain that was neither severe nor irritable. (Tr. 120). In making this assessment, he noted that Plaintiff reported chronic left pain, but was able to "ambulate without assistance" and perform a deep knee bend. (Tr. 120). He further noted that Plaintiff's "gait speed was remarkably fast," as was his ability to stand and pivot left and right. (Tr. 120). State consultant Dr. Ann Fingar reaffirmed these findings on reconsideration. (Tr. 131).

At the hearing, Plaintiff testified that he walks everywhere (Tr. 59), but that his knee affects his ability to twist and turn quickly or to make sudden movements. (TR. 61). He also testified that he cannot kneel or crouch as a result of his knee pain, but that he can crawl, though with some difficulty. (Tr. 62). He further indicated that his knee "gives out" after standing for long periods of time and estimated that he can only stand for 25 minutes at a time. (Tr. 63). He testified, however, that he is able to walk long distances at a time,

and that he was able to walk the three or four blocks to the ALJ hearing without stopping. (Tr. 64-66). Plaintiff indicated that he could not be on his feet six hours a day. (Tr. 67).

There is substantial evidence in the record to support the ALJ's decision. The medical evidence regarding the time period relevant to Plaintiff's application shows that the providers he saw all diagnosed his knee pain as non-severe and non-irritable. His providers further observed his gait to be normal, his range of motion to be full, and there to be no effusion or tenderness in his knee. Plaintiff relied only on over-the-counter medications to treat his pain and an x-ray taken of his knee showed nothing out of the ordinary. The lack of any additional surgical intervention and the conservative treatment support the ALJ's finding that Plaintiff's knee pain was not severe and did not require any limitation to his RFC. *Buford v. Colvin*, 824 F.3d 793, 796-97 (8th Cir. 2016).

Moreover, Plaintiff himself does not identify any medical evidence in the record to contradict the ALJ's findings. Instead, he simply relies on the ALJ's findings from his previous application, contending that "common sense" requires that some limitations be placed on him. He also contends that the fact he met with medical providers regarding his knee is sufficient to justify physical limitations consistent with the 2011 ALJ's findings and conclusions regarding his RFC. None of the medical evidence, however, shows that Plaintiff would be physically restricted in his work. Instead, the evidence shows that Plaintiff had some chronic knee pain that was not severe and that did not inhibit his range of motion or his ability to walk great distances. Treatment was relatively sporadic and inconsistent. *See id.* at 797 (upholding RFC determination where record shows lack of consistent treatment); *Patrick v. Comm'r of Soc. Sec.*, No. 10-cv-780, 2011 WL 821385 *5

11

(D. Minn. Jan. 26, 2011) (finding that subjective complaints of severe pain cannot justify limitations where medical opinions suggest pain can be treated "with conservative measures"), *report and recommendation adopted by* 2011 WL 821373 (D. Minn. Mar. 2, 2011). The ALJ's RFC was therefore supported by substantial evidence.

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 12) be **DENIED** and the Commissioner's Motion for Summary Judgment (ECF No. 16) be **GRANTED**.


Date: May 10, 2019                                  *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

                                                    *LeeAnthony C. v. Berryhill*
                                                    Case No. 18-cv-77 (NEB/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).